UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

KVN CORP., INC.,                                              No. 13-10477

                    Debtor(s).
_____/

Memorandum on Applications for Compensation
_____

      Debtor KVN Corporation operated a sporting goods store before its failure and Chapter 7 bankruptcy on March 8, 2013. Linda Green was appointed to be the Chapter 7 trustee; she hired the law firm of MacConaghy and Barnier, PLC, to be her counsel in the case.

      Green obtained permission to hold an auction sale of the estate's assets. Before the auction, on May 2, 2013, the court was asked to approve a stipulation between Green and Wilshire State Bank whereby Green would liquidate some firearms which were pledged as collateral to the bank in return for half the proceeds. Under the agreement, the bankruptcy estate would receive about $4,000.

      The court was immediately concerned that neither Green nor her counsel recognized the impropriety of what seemed to them to be a simple transaction. They did not realize the potential for abuse when a trustee undertakes to liquidate fully encumbered collateral for a secured creditor. The court had seen just such abuses in dealing with a dishonest trustee some years before. The court accordingly declined to approve the stipulation without further evidence of the need for the agreement and a hearing, which was held on May 10, 2013.

1

After the May 10 hearing, the court was not convinced that there was a need for the agreement which outweighed its inherent impropriety, but left the door open to reconsideration. Such a motion was heard on June 14, 2013. At that hearing, the lesser-experienced member of Green's law firm made the worst argument she could have made: that she and her client were entitled to a presumption of honesty because they were a Chapter 7 trustee and her counsel, and that they were entitled to feel insulted because the court had questioned their agreement with the Bank. Given what the court considered to be a poor argument, and taking into account the small potential benefit to the bankruptcy estate, the court denied the motion.

Green appealed the court's decision. The Bankruptcy Appellate Panel agreed with this court that a presumption of impropriety governed the agreement, and used the occasion to publish a decision enumerating factors a court should apply in considering an unusual agreement between a Chapter 7 trustee and a secured creditor. *In re KVN Corp., Inc.,* 514 B.R. 1 (9th Cir. BAP 2014). The Appellate Panel rejected Green's argument that this court's presumption of impropriety was error, 514 B.R. at 7, and specifically held that when a Chapter 7 trustee makes a deal with a secured creditor to liquidate its collateral a rebuttable presumption of impropriety arises. 514 B.R. at 8. The Appellate Panel remanded the matter to this court for further findings of fact consistent with its opinion.[1] In the meantime, the Bank decided to waive its security interest as the court had originally suggested. The matter was never brought back before the court.

The fee application of the professionals in the case have applied for compensation. Green has applied to the court for allowance $8,694.51 in fees and $273.82 in expenses; her counsel has applied for fees of $44,420.00 and expenses of $1,924.42. Of the latter, approximately 40% was for time expended on the Wilshire State Bank agreement. There is $89,907.13 available for distribution. If the

---

[1] The court is troubled by the representation in the fee application of Green's counsel that this court's decision was reversed. The court finds no intentional misrepresentation, but had hoped that Green and her counsel might have learned something from the experience. There is no lesson to be learned if they did not review the appellate opinion carefully.

court allows the fee applications as filed, most of these funds will be paid to Green and her counsel; less than $20,000.00 will go to creditors.

The burden of justifying a fee application is on the applicant. The court sees no justification in allowing Green's counsel to be compensated for spending so much time on an issue which promised to return only $4,000 to the estate, especially since counsel's primary argument was specifically rejected by the Appellate Panel and the whole issue, in the end, turned out to be moot. The court cannot help but feel that if Green had initially decided not to accommodate the Bank, or had at least accepted the court's initial rejection of the agreement, the return to creditors would have been considerably greater.

The court remains mystified by counsel's taking the questioning of the propriety of the agreement with the Bank as a personal insult, as if a bankruptcy trustee is always the "good guy" who rides to the rescue of creditors and does battle with dishonest debtors. The court in its decades on the bench has seen honest and dishonest trustees, honest and dishonest debtors, and honest and dishonest lawyers. There is no justification for a trustee's lawyer taking a bankruptcy judge's inquiry personally. The court intended no insult; it was just doing its job.

Taking all of the factors into consideration, the court feels that a reduction in counsel's fees is required because the return to creditors would have been considerably greater if counsel had first recognized and advised Green of the problems involved in liquidating a secured creditor's collateral where there is no equity for the estate and second had not taken personally the court's identification of the proposed agreement as improper. The court will accordingly allow Green $7,500[2] in fees and her counsel $35,000. Expenses will be allowed as filed, as well as the fees and expenses of Green's accountant. Green shall submit an appropriate form of order.

//

---

[2] Green is herself a lawyer and should have known that side deals with secured creditors are disfavored. More importantly, she should have seen that the costs and fees associated with trying to obtain approval of her agreement with the Bank were not justified by the small potential benefit to the estate. It is the trustee's case, and the trustee is ultimately responsible for allowing her counsel to take actions which are not in the best interests of the bankruptcy estate.

3

Dated: July 5, 2016

Alan Jaroslovsky
U.S. Bankruptcy Judge

4